1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   STARBUCKS CORPORATION,                    CASE NO. C13-1170-MJP

11                        Plaintiff,           ORDER GRANTING MOTION TO
                                               DISMISS
12          v.

13   WELLSHIRE FARMS, INC.,

14                        Defendant.

15          This matter comes before the Court on the motion of Defendant Hahn Bros. Inc. to

16   dismiss for lack of personal jurisdiction.  (Dkt. No. 24.)  Having reviewed the motion, the

17   responses (Dkt. No. 28-29), Hahn's reply (Dkt. No. 32), and all related papers, the Court finds it

18   lacks personal jurisdiction over Hahn and GRANTS the motion.

19                                        **Background**

20          Hahn is a Maryland-based corporation specializing in the processing and packaging of

21   meat products.  (Dkt. No. 1 at 2.)  Its processing of ham for use in Starbucks' sandwiches is the

22   subject of this lawsuit.  (Id. at 4.)

23

24

ORDER GRANTING MOTION TO DISMISS- 1

1      This case begins with Starbuck's decision to introduce new warm breakfast sandwiches

2  to its stores nation-wide in 2008.  (Id. at 1)  To those ends, Starbucks provided non-party SK

3  Food Group ("SK Food") with specifications for the new sandwiches.  (Id. at 2-3)  SK Food is a

4  food assembler, who sourced the ingredients for the new sandwiches, and produced several

5  sandwich options for Starbucks' consideration in blind taste-tests.  (Id.)  Starbucks selected a

6  ham sandwich with Black Forest ham it believed to be produced by Wellshire Farms, Inc.,

7  another defendant in this case.  (Id. at 3)

8      Starbucks also decided to redesign its chilled lunch sandwiches and followed a similar

9  process for choosing a new sandwich: SK Food provided options and Starbucks again choose a

10 sandwich it believed to have Wellshire Farms' Black Forest ham.  (Id. at 3)  In reality, the ham

11 was processed by Hahn.  (Dkt. Nos. 25 at 2, 26 at 2-3.)  Starbucks did not have a contract with

12 either Hahn or Wellshire.  Instead, Starbucks contracted with the sandwich assemblers, who then

13 contracted with Wellshire, a meat vendor.  Only Wellshire contracted with Hahn.

14     Shortly after the sandwich redesign, Starbucks received customer complaints about

15 spoiled ham.  (Dkt. No. 1 at 3.)  Starbucks issued "Stop Sell and Discard" notices to its stores.

16 (Id. at 3-4.)  Starbucks alleges that only after a second round of complaints and an investigation,

17 did it learn that Hahn—not Wellshire—had actually produced the ham.  (Id. at 4.)  Starbucks

18 issued a second, followed by a third "Stop Sell and Discard" notice to its stores.  (Id.)  After

19 these problems persisted, Starbucks suspended its sales of the sandwiches.  (Id. at 5.)

20     Starbucks' settled with the sandwich assemblers for losses they suffered from the alleged

21 defective ham.  (Id. at 5-6)  In return, the assemblers assigned their rights to bring claims against

22 Hahn and Wellshire to Starbucks.  (Id.)

23

24

ORDER GRANTING MOTION TO DISMISS- 2

1    Asserting the sandwich assemblers' assigned rights, Starbucks sues Hahn and Wellshire

2    for breach of implied warranty of fitness for a particular purpose under RCW 62A.2-315, breach

3    of contract on a third-party beneficiary rights theory, negligence, and a claim of violation of

4    Washington's Consumer Protection Act.  (Id. at 6-11.)  Starbucks claims at least $4.8 million in

5    damages and attorney fees.  (Id. at 11.)

6    Hahn now moves to dismiss for lack of personal jurisdiction.  Hahn argues: (1) general

7    jurisdiction does not exist, because it conducts no business in the state nor has a physical

8    presence in Washington; (2) specific jurisdiction does not exist because it has not purposefully

9    availed itself of the forum, and jurisdiction offends notions of fair play and substantial justice.

10    (Dkt. No. 24 at 10-16.)  Indeed, the record shows Hahn has no offices, stores, outlets,

11    distributors, warehouses, or employees within Washington, nor does it have substantial sales of

12    ham or other products here.  (Dkt. Nos. 25, 26.)

13    Starbucks counters that specific jurisdiction exists because Hahn has placed defective

14    products into the stream of commerce, caused economic losses to Starbucks in Washington state,

15    and compelled production of documents from the Starbucks corporation for use in other

16    litigation.  (Dkt. No. 29 at 8-15.)

17                                  **Discussion**

18        A.     Legal Standard

19    As Plaintiff, Starbucks bears the burden of establishing that the court has personal

20    jurisdiction.  See, e.g., Zigler v. Indian River Cnty., 64 F.3d 470, 473 (9th Cir. 1995).  Because

21    the court is resolving the motion to dismiss without holding an evidentiary hearing, Starbucks

22    "need make only a prima facie showing of jurisdictional facts to withstand the motion."  Wash.

23    Shoe Co. v. A–Z Sporting Goods, Inc., 704 F.3d 668, 671–72 (9th Cir. 2012).  That is, Starbucks

24

1    need only demonstrate facts that if true would support jurisdiction over [Hahn].  Bancroft &

2    Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1085 (9th Cir. 2000) ("Where ... the district

3    court does not hold an evidentiary hearing but rather decides the jurisdictional issue on the basis

4    of the pleadings and supporting declarations, we will presume that the facts set forth therein can

5    be proven.").  Neither party has requested an evidentiary hearing.

6           In addition to Starbuck's complaint, the parties have submitted affidavits both in support

7    of and in opposition to the motion.  (Dkt. Nos. 25-26, 30, 33-34.)  In determining whether

8    Starbucks has met its burden of making a prima facie showing of jurisdictional facts, the court

9    considers uncontroverted allegations in Starbuck's complaint as true and resolves conflicts

10   between facts contained in the parties' affidavits in Starbuck's favor.  AT & T v. Compagnie

11   Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

12          Because there is no federal statute governing personal jurisdiction in this case,

13   Washington's long-arm statute applies.  Wash. Shoe, 704 F.3d at 672.  That statute extends

14   jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause of the

15   Fourteenth Amendment.  Id.  Because Washington's long-arm statute is coextensive with federal

16   due process, the state-law jurisdictional analysis is the same as the federal due process analysis.

17   AT & T Co., 94 F.3d at 588.  "The relevant question, therefore, is whether the requirements of

18   due process are satisfied by the exercise of personal jurisdiction over [Hahn] in Washington."

19   Id.  Federal due process requires that a defendant have sufficient minimum contacts with the

20   forum state that the exercise of personal jurisdiction will not offend traditional notions of fair

21   play and substantial justice.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

22          There are two different kinds of personal jurisdiction: general and specific.  Starbucks

23   does not argue this Court has general personal jurisdiction over Hahn.  With that concession, the

24

ORDER GRANTING MOTION TO DISMISS- 4

Court only addresses specific jurisdiction.  The Ninth Circuit employs a three-part test to

determine whether a court has specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  Starbucks bears

the burden of alleging the first two prongs of the test.  If successful, Hahn then bears the burden

of showing that an exercise of jurisdiction would not be reasonable. See College Source, Inc. v.

Academy One, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011).

        B.        No Specific Jurisdiction

        Starbucks has not alleged facts that would establish Hahn purposefully directed activities

to the residents of Washington sufficient to support the claims plead here.  Starbucks raises three

arguments for personal jurisdiction.  None are persuasive.

        1.   Stream of Commerce

        Starbucks alleges Hahn's placement of a defective product into the stream of commerce

with the knowledge it would be used in Starbucks' sandwiches is sufficient contact for specific

jurisdiction.  (Dkt. No. 23 at 15.)  The Court rejects this argument because it ignores the well-

established rule that a defendant's mere awareness a product will be placed in the stream of

commerce and may reach the forum state is insufficient for the exercise of specific jurisdiction.

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).  Although a majority of the

Supreme Court has yet to agree on the exact requirements for the application of the stream of

commerce theory, a plurality stated that a company must do more than just place a product in the

1   stream of commerce; it must purposefully direct some action toward the forum state.  <u>J. McIntyre</u>

2   <u>Machinery, Ltd. v. Nicastro</u>, ─── U.S. ───, ───, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765

3   (2011).  Examples of affirmative or additional conduct that " 'may indicate an intent or purpose

4   to serve the market in the forum State include marketing the product through a distributor who

5   has agreed to serve as the sales agent in the forum State, and designing the product for the

6   market in the forum State."  <u>Bou–Matic, L.L. C. v. Ollimac Dairy, Inc.</u>, 2006 WL 658602, *4

7   (E.D.Cal. 2006) (citing <u>Asahi</u>, 480 U.S. at 112–13 and <u>Tobin v. Astra Pharm. Prods.</u>, Inc., 993

8   F.2d 528, 544 (6th Cir. 1993) ("something more" requirement of <u>Asahi</u> plurality satisfied where

9   defendant sought and obtained a distributor to market its product in each and every state);

10  <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1566 n. 15 (presence of

11  established distribution channel is a significant factor in cases involving stream of commerce

12  theory).

13          In the present case, Starbucks fails to show Hahn engaged in additional conduct

14  necessary for this Court to exercise jurisdiction.  Hahn did not attempt to serve the market in

15  Washington, market itself here, or otherwise direct its upstream commerce to this district.

16  Hahn's singular act of making ham is too attenuated for specific jurisdiction to exist.

17  Furthermore, Hahn's only act that tips towards finding additional conduct (sending ham samples)

18  was done not at its own initiative, but at the direction and payment of a customer, Wellshire.

19  (Dkt. No. 34 at 5.)  Hahn had no control over any aspect of the ham's distribution after it left the

20  Maryland facility with Wellshire's packaging and imprint.  (<u>Id.</u>)  The Court does not find the act

21  of producing ham that is later distributed and controlled by third parties, as purposefully availing

22  itself of the benefits of this forum.

23          2.   <u>Effect on Washington</u>

24

1    Starbucks also theorizes that Hahn is subject to this Court's jurisdiction because "the loss

2    suffered by Starbucks Corporation as a result of Hahn's defective ham is felt by

3    Starbucks'…home state of Washington." (Dkt. No. 29 at 14.)  It contends that for jurisdictional

4    purposes, a corporation incurs economic loss in the forum of its principle place of business.  (Id.

5    at 14-15.)  This argument mischaracterizes the law in this Circuit.  If Starbucks alleged

6    intentional torts against Hahn, then indeed, this Court would apply the effects test articulated in

7    Calder v. Jones, 465 U.S. 783 (1984), and would ask (1) if Hahn committed an intentional act,

8    (2) if that tort was expressly aimed at the forum state, (3) and if it caused harm that it knew was

9    likely to be suffered in the forum state.  See e.g.  Dole v. Watts, 303 F.3d 1104-1113-14 (9th Cir.

10    2002), Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487 (9th Cir. 1993), Panavision

11    Int'l v. L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998).  That is not the situation presented here:

12    Starbucks does not allege Hahn committed an intentional tort.  Rather, against Hahn, Starbucks

13    alleges breach of contract and negligence.  Holland America Line Inc. v. Wartsila North

14    America, Inc., 485 F.3d 450, 460 (9th Cir. 2007) ("it is well established that the Calder test

15    applies only to intentional torts, not to the breach of contract and negligence claims.")

16    Therefore, the effects test has no application here.  See Pebble Beach Co. v. Caddy, 453 F.3d

17    1151, 1155 (9th Cir. 2006).   The losses in Washington are not a basis for specific jurisdiction.

18                    3.   Subpoenas

19    Starbucks suggests Hahn subjected itself to the Court's jurisdiction by subpoenaing

20    records from Starbucks for use in a case in New Jersey. (Dkt. No. 29 at 15.)  The Court turns to

21    the second part of the specific jurisdiction test because even if Hahn engaged in civil discovery,

22    it fails to show its claims arise from that contact.  The arising out of requirement is met if "but

23    for" the contacts between the defendant and the forum state, the cause of action would not have

24

1   arisen.  Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997).  Here, there is no "but

2   for" relationship between the subpoenas sought by Hahn and Starbucks' claims here.  Starbucks'

3   factual allegations supporting the claims asserted in this case occurred well before Hahn's 2011

4   subpoena requests.  Accordingly, Starbucks has not satisfied its burden as to the second prong

5   for specific jurisdiction.

6          In sum, the Court lacks specific jurisdiction over Hahn because it did not direct its

7   activities to this forum and Starbucks' claims do not arise from Hahn's limited contact with the

8   state.  Having determined Hahn did not purposefully avail itself to Washington or that its

9   contacts with Washington are too attenuated for specific jurisdiction to exist, the Court GRANTS

10  the motion.

11         In deciding this matter on the record before it, the Court DENIES Starbucks' request for

12  time to conduct jurisdictional discovery.  Leave to take jurisdictional discovery should be

13  permitted when "pertinent facts bearing on the question of jurisdiction are in dispute." or where a

14  more satisfactory showing of the facts is necessary.   Am. W. Airlines, Inc. v. GPA Grp., Ltd.,

15  877 F.2d 793, 801 (9th Cir. 1989) (citing Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d

16  406, 430–31 n. 24 (9th Cir. 1977)).  In the present case, Starbucks does not identify any factual

17  dispute requiring discovery.  Nor does there appear to be a reasonable likelihood additional facts

18  may be uncovered to support jurisdiction.  Starbucks lists possible topics that could be

19  discovered; but other than its own suspicsions, it fails to show discovery is likely to lead to such

20  evidence.  The Court DENIES the request.

21  //

22  //

23  //

24

ORDER GRANTING MOTION TO DISMISS- 8

1

**Conclusion**

2        Because Defendants do not have minimum contacts with this District, this Court does not

3   have personal jurisdiction over Defendants.  The motion is GRANTED.  (Dkt. No. 24.)  The

4   clerk is ordered to provide copies of this order to all counsel.

5        Dated this <u>17th</u> day of December, 2013.

6

7   _____
    Marsha J. Pechman
8   Chief United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION TO DISMISS- 9