1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

| STARBUCKS CORPORATION, | CASE NO. C13-1170-MJP |
|---|---|
| Plaintiff, | ORDER GRANTING MOTION TO TRANSFER |
| v. | |
| WELLSHIRE FARMS, INC., | |
| Defendant. | |

11
12
13
14
15
16

This matter comes before the Court on Defendant Wellshire Farms Inc.'s motion to transfer this case to the District of New Jersey.  (Dkt. No. 35.)  Having reviewed the motion, Starbucks Corporation's response (Dkt. No. 39), Wellshire's reply (Dkt. No. 41), and all related papers, the Court GRANTS the motion and transfers this case to New Jersey.  This is a case about ham made in Maryland, sold by a New Jersey meat vendor to non-parties in Nevada, Illinois, and Pennsylvania.  Those non-parties assembled the ham into sandwiches, which were sold at Starbucks' stores throughout the United States.   (Dkt. No. 1).  Consequently, this matter should be litigated in the District of New Jersey, whose ties to this action substantially outweigh Plaintiff's decision to file suit in this District.

ORDER GRANTING MOTION TO TRANSFER-1

**Background**

In 2008, Starbucks decided to introduce new warm breakfast sandwiches to its stores nation-wide.  (Id. at 1)  Starbucks provided non-party SK Food Group ("SK Food") with specifications for the new sandwiches.  SK Food is a food assembler, who sourced the ingredients for the new sandwiches, and produced several sandwich options for Starbucks' consideration in blind taste-tests.  (Id. at 2-3)  Included in these samples was ham from meat vendor Wellshire.  (Id.)  Starbucks selected the sandwich containing ham it believed Wellshire produced.  (Id.)  Soon after, Starbucks decided to also redesign its chilled lunch sandwiches and followed a similar process for choosing a new ham sandwich: SK Food provided options and Starbucks again choose a sandwich it believed to have Wellshire's ham.  (Id. at 3)

Wellshire is a New Jersey corporation, whose 22 employees work in its Swedesboro, New Jersey office.   (Dkt. No. 36 at 1, 3.)  It contracted with Hahn Bros. Inc. for the production of maple-flavored ham logs marked with Wellshire's symbols/marks.  Wellshire then contracted with SK Food in Reno, Nevada, as well as other assemblers, who incorporated the ham into the sandwiches.  (Id. at 2.)  Wellshire negotiated its contracts Hahn and the sandwich assemblers from New Jersey.  (Dkt. No. 42.)  Hahn and the sandwich assemblers, including SK Food, invoiced Wellshire's New Jersey office.  (Dkt. No. 36 at 2-3.)  Starbucks and Wellshire have no direct contractual relationship.  (Id.)

Soon after the sandwich redesign, Starbucks' customers began complaining the ham was discolored, had an unusual taste, and appeared spoiled.  (Dkt. No. 1 at 3.)  Starbucks issued a "Stop Sell and Discard" notices to its stores.  (Id. at 4.)  Starbucks issued a second, followed by a third "Stop Sell and Discard" notice to its stores.  After these problems persisted, Starbucks suspended sales of the sandwiches.  (Id. at 4-5.)

1    Starbucks' settled with the sandwich assemblers for their losses resulting from the

2   allegedly defective ham.  (Id. at 5-6)  In return, the assemblers assigned their rights to bring

3   claims against Hahn and Wellshire to Starbucks. (Id.)

4    Asserting the sandwich assemblers' assigned rights, Starbucks sued Hahn and Wellshire

5   for breach of implied warranty of fitness for a particular purpose under RCW 62A.2-315, breach

6   of contract on a third-party beneficiary rights theory, negligence, and a claim for violation of

7   Washington's Consumer Protection Act for Wellshire's alleged misrepresentation that it made

8   the ham.  (Id. at 6-11.)  Starbucks claims at least $4.8 million in damages and attorney fees.  (Id.

9   at 11.)

10    Hahn was already dismissed from this case for lack of personal jurisdiction.  (Dkt. No.

11   42.)

12    Wellshire now moves to transfer venue to the District of Jersey under 28 U.S.C. §

13   1404(a) on the grounds the events occurred in New Jersey and Maryland and that court has better

14   access to proof and witnesses.  (Dkt. No. 35.)  Starbucks opposes transfer.  Starbucks contends a

15   plaintiff's choice of forum is given presumption.  (Dkt. No. 39.)

16                                     **Analysis**

17         A.    Standard

18    The Court has broad discretion to transfer cases in the interest of justice.  28 U.S.C. §

19   1404(a).  Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005).  Under

20   section 1404(a), The Court must make two findings before granting transfer: (1) the transferee

21   court must be one where the action "might have been brought," and (2) the convenience of the

22   parties and witnesses and the interest of justice favors transfer.  Hatch v. Reliance Ins. Co., 758

23   F.2d 409, 414 (9th Cir. 1985).  The purpose of this statute is to "prevent the waste of time,

24

ORDER GRANTING MOTION TO TRANSFER-3

energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Pedigo Prod., Inc. v. Kimberly–Clark Worldwide, Inc., 2013 WL 364814, at *2 (W.D.Wash. Jan. 30, 2013) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

The Court finds Defendants have satisfied both factors in support of transfer.

### A. Plaintiff Could Have Brought This Action In The District of New Jersey

The Court finds that this action could have been brought in the District of New Jersey. The moving party, Wellshire, acknowledges that it is subject to personal jurisdiction in that district for purposes of 28 U.S.C. § 1391(b)(2), and Starbucks does not argue that venue in New Jersey is improper.  28 U.S.C. § 1391(b).

### B. Convenience and Fairness

Under the second element of section 1404(a), the Court weighs grounds of convenience and interest of justice by considering:

> the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the cost of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000).  Wellshire must make a strong showing of inconvenience to justify displacement of Starbucks' choice of forum.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

After considering the above factors, the Court finds that this case should be transferred to New Jersey.

### 1. Location Where Relevant Agreements Were Negotiated and Executed

Starbucks asserts two claims for breach of contract. But, none of the agreements underlying Starbucks' claims were negotiated in Washington. (Dkt. No. 1 at 7-8.) Instead, Wellshire negotiated these agreements from New Jersey. This factor weighs in favor of transfer.

### 2.  State Most Familiar with Governing Law

Starbucks asserts Washington-law claims against Wellshire: breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and a Washington Consumer Protection Act claim. (Dkt. No. 1 at 6-7, 11.) Only the latter, the CPA claim, is a unique to Washington. (See N.J.S.A. 12A:2–314 (implied warranty of merchantability), N.J.S.A. 12A:2–315 (implied warranty of fitness for a particular purpose)). Nonetheless, Wellshire persuasively argues that a New Jersey court could competently evaluate the CPA claim because it may turn on the factual (not legal) dispute, for example, if Starbucks knew Hahn produced the ham. (Dkt. No. 42 at 2.) Thus, the Court finds this factor, on balance, is neutral.

### 3.  Plaintiff's Choice of Forum

Courts generally given great weight to plaintiff's choice of forum. It will not be disturbed absent a strong showing that the convenience of the parties and/or the interests of justice warrant a transfer. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1180 (9th Cir. 2006).

Starbucks' choice to litigate here in this District does weigh in its favor, but not to the extent it contends. The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice lacks a significant connection to the activities alleged in the complaint. Amazon.com v. Cendant Corp., 404 F.Supp.2d 1256, 1260 (W.D.Wash. 2005). Although Starbucks' business decisions may have occurred in Washington,

the significant and material events relating to the allegations in the complaint did not.  This case is largely about whether the ham produced by Hahn under Wellshire's label was defective. These events took place in Maryland and New Jersey.  Washington is simply not a nucleus for the crux of these claims and Starbucks' choice of this District is consequently given less weight. Therefore, the Court affords slight deference to Plaintiff in choosing this District as a forum.

### 4.  The Parties' Contacts With The Forum

Starbucks has extensive contacts with the Western District of Washington, as it is a Washington corporation with its principle place of business in Seattle.  (Dkt. No. 1 at 1.)  In contrast, Wellshire is a New Jersey corporation with virtually no contacts with the state.   (Dkt. No. 36 at 1-2.)

If the same question is asked of New Jersey, the parties' contacts are not symmetrically reversed.  Wellshire, as a New Jersey corporation has substantial contacts with that forum.  (Id.) And, from the complaint it appears Starbucks has locations throughout the United States, including New Jersey.  This factor balances slightly in favor of transfer, since both parties have some relationship to that forum.

### 5.  Cost of Litigation

Starbucks argues the cost of litigation factor is a tie: it is cheaper for Starbucks to litigate in this District and cheaper for Wellshire to litigate in New Jersey.  The Court disagrees for two reasons.  First, the Court may consider the parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration.  Peterson v. Nat'l Sec. Techs., LLC, 2012 WL 3264952, at *5 (E.D.Wash. Aug. 9, 2012) (citing Boateng v. General Dynamics Corp., 460 F.Supp.2d 270, 275 (D.Mass. 2006) ("[T]he balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best

1 | position to absorb and spread it.")).  Starbucks' is a multinational company with substantial

2 | resources; in contrast, Wellshire is a small New Jersey company with less than 25 employees.

3 |      Second, litigation costs reduce when venue is located near most of the witnesses expected

4 | to testify or be deposed. The convenience of the witnesses is often the most important factor

5 | when determining which forum would be the most convenient. <u>Florens Container v. Cho Yang</u>

6 | <u>Shipping</u>, 245 F.Supp.2d 1086, 1092 (N.D.Cal.2002).  Although Starbucks identifies 14 potential

7 | witnesses, 8 offer testimony on the exact same topics: Wellshire and Hahn's alleged breaches of

8 | contracts, Starbucks investigation efforts, Starbucks' mitigation, and Wellshire's alleged

9 | misrepresentations.  Three other individuals offer overlapping testimony on injury and damages.

10 | (Dkt. No. 40.)  Consequently, the 14 witnesses Starbucks identifies are more likely 3-4.

11 | Additionally, many of the material witnesses, including those from the non-party sandwich

12 | assemblers located in Nevada, Illinois, and Pennsylvania, will have to travel to either Seattle or

13 | New Jersey.  (Dkt. No. 41 at 7.)  And, given the settlement agreement between Starbucks and

14 | those non-party assemblers, they will be compelled to appear wherever Starbucks litigates this

15 | case.  (Dkt. No. 40-1.)

16 |      The Court finds the costs of litigation weighs toward transfer.

17 |           6.  <u>Availability of compulsory process</u>

18 |      Federal Rule of Civil Procedure 45(c)(3) provides that a court must, on a timely motion,

19 | quash a subpoena issued to any person who resides more than 100 miles away from the location

20 | at which he or she has been ordered to appear. A court's subpoena power only matters if non-

21 | party witnesses within the state will likely refuse to testify.  <u>Ahead, LLC v. KASC, Inc.</u>, 2013

22 | WL 1747765, at *12 (W.D.Wash. Apr.23, 2013).  Here, this factor is neutral because the parties

23 | do not identify any non-party witness who may need to be subpoenaed.

24 |

1              7.  <u>Access to proof</u>

2          This factor favors New Jersey.  Having presided over litigation between Hahn, Wellshire,

3    and SK Food, the New Jersey is the best venue to address the discovery already exchanged

4    between those entities and already subject to a court order.  Starbucks' representation that the

5    New Jersey court simply "approved" the stipulated protective order ignores that court's

6    enforcement power.   Specifically, a litigant in collateral litigation who seeks access to a

7    protected discovery must make an application to the Court that issued the protective order.  <u>See</u>

8    <u>Foltz v. State  Farm Mut. Auto Ins. Co.</u>, 331 F.3d 1122 (9th Cir. 2003).   In this case, the

9    appropriate court for Starbucks to seek modification or access to the protected discovery is New

10   Jersey.

11         Also weighing in favor of transfer is the amount of discovery still to be produced from

12   entities outside of Washington.  Starbucks represents it "has already gathered and produced

13   most, if not all the relevant documents," pointing to nearly 47,000 pages produced in the New

14   Jersey litigation.  (Dkt. No. 39 at 21).  In contrast, Wellshire argues the claims here are broader

15   than those asserted in the prior New Jersey litigation, thus requiring Wellshire, Hahn, and the

16   sandwich assemblers to produce more.  (Dkt. No. 35 at 20-21.)  These documents are not in

17   Washington, but in New Jersey, Maryland, Pennsylvania, Illinois, and Nevada.  (<u>Id.</u>)

18         Additionally, as already discussed above, many of the potential witnesses are on the east

19   coast, including New Jersey.  Wellshire identifies three witnesses who live in New Jersey and

20   another three who live in one of the nearby states.  Witnesses from Hahn reside and/or work in

21   Maryland.

22         This factor favors New Jersey.

23              8.  <u>Other Factors</u>

24

1    Two additional factors weigh in favor of transfer.  Public policy factors include the "local

2    interest in having localized controversies decided at home" and deciding cases "where the claim

3    arose."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).  In

4    this case, most of Starbucks' claims were assigned from the non-party sandwich assemblers.

5    Although Starbucks was down-stream from the agreements between Hahn and Wellshire and

6    Wellshire and the sandwich assemblers, this matter is not a localized controversy.  Instead,

7    whether Wellshire and Hahn produced defective ham has a great affect on New Jersey and

8    Maryland, where these claims arose.  Therefore, this factor tips in favor of New Jersey.

9        Second, transfer may facilitate the resolution of Starbucks' claims against all parties,

10   including Hahn who has already been dismissed from this case.  (Dkt. No. 43.)  "Concerns over

11   judicial efficiency are paramount" in weighing a motion to transfer.  Johansson v. Cent. Garden

12   & Pet Co., 2010 WL 4977725, at *3 (N.D.Cal. Dec. 2, 2010).  Although the Court does not reach

13   the merits of whether the New Jersey court has personal jurisdiction over Hahn, it is mindful that

14   Hahn has already subjected itself to jurisdiction there in the prior litigation.  Hoffman v. Blaski,

15   363 U.S. 335, 342 n. 9 (1960) (when a transferor court does not determine the jurisdiction of the

16   transferee court, the transferee court retains the power to determine its own jurisdiction).  By

17   transferring this case to New Jersey, economic resolution of all claims against all parties may be

18   achieved.  The converse is not true, if this Court retains the case.  Conservation of judicial

19   resources mandates transfer.

20       On balance, most of the Jones factors favor transfer. Plaintiff's choice of forum and the

21   claims involving Washington law weigh against transfer.  However, the crux of the case belongs

22   in New Jersey; further, the convenience of the parties, witnesses, and counsel, as well as the

23   costs of litigation weigh just as strongly—if not more so—in favor of transfer.

24

ORDER GRANTING MOTION TO TRANSFER-9

1

**Conclusion**

2        The Court GRANTS Defendant's motion to transfer.  (Dkt. No. 35.)  The matter will be

3   litigated in the District of New Jersey, whose ties to this action substantially outweigh Plaintiff's

4   decision to file suit in this District.  The Court therefore TRANSFERS this case to the United

5   States District Court for the New Jersey.

6        The clerk is ordered to provide copies of this order to all counsel.

7        Dated this <u>18th</u> day of December, 2013.

8

9        Marsha J. Pechman
10       Chief United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION TO TRANSFER-10